Mr. Ruth, nice to see you. Please the court. My name is Rob Ruth. I'm the attorney for Jaison Coleman. This case presents a situation of clear air by the district judge. And to borrow a phrase from you, Judge Scudder, I think the air really boils down to the district judge is trying to pound a square peg into a round hole. The fact, and he does it by misstating the facts and by misapplying the law. So start with the facts, the very basic facts. And that is the officer says to Lisa, can I come in? And she says no. A clear and unequivocal denial of consent to enter. He requests general consent and she clearly denies it. And then there's the business of the shoes, right? She asks, can I get my shoes? He tells her, get your shoes and then come back up. She goes in, she goes in to get her shoes. She doesn't come back fast enough. He starts calling for her. He opens the door and starts calling for her. She eventually comes back out. And this time, the officer changes his tactic. He's not going to ask anymore. He already asked and got the answer, no. And this time, he shifts over to a more determinate statement, an expression of need. He says, well, we almost need to come inside to check on the kids. Can I stop you for a minute? Because when I look at this, I'm sorry. Here's what I've got. How's everything going in there? No verbal response. Shrugs and shakes her head side to side. Is that your obvious no? No. The obvious no is when he says, can I come in? And she says, with her arms folded like this in a defensive posture, she says, I prefer that you not. With emphasis on the word not. That's her denial. And we know that the officer understood it as a denial because when she left and the two officers are talking amongst themselves, he said, she doesn't want us to come in. That's the denial. Okay, but you're not arguing that even if you want to cast it as you do, and I understand why you're doing it, as a statement of need. I'm sensing we almost need to come inside. Okay, even if you want to cast, that statement, and there's nothing wrong with a statement. And then it's a matter of how, then you've got to look at how she responds to it. She not only says okay, right? She then, I think she did two things, if I remember right. You'll correct me. She said, he meaning, I think it's the husband, right? Yes, Jason Coleman. Yeah, the husband's in the bedroom, or I think he's in the bedroom. And then the second thing was, you know, yes, there's dogs, but the dogs are friendly. They're not going to bite you. So those are not indicative of, you wouldn't say that if you didn't envision that this guy's about ready to walk in. It's already happened at that point, though, Judge. Go ahead. What the district court said is, the grant of consent was, so first she says, I prefer that you not. They go on a little bit longer, and then he says, I feel like I almost need to come in to check on the kids. And she says, okay. That's what the district court says was the grant of consent. And then he puts in there something that actually didn't happen. And this came from the magistrate, Judge, in the report and recommendation. It says that she nods her head yes. That's absolutely false. It didn't happen. She doesn't nod her head yes. She says, okay. So that's it. At that point, then, they're coming in. She gets out of the way, and they're coming in. And then she talks about the dogs, because he's already coming in. And then she basically, they go in, and then they go do their thing. And so when you have a clear and unequivocal denial of consent, when she says, I prefer that you not, there's not a single case in this circuit or otherwise that says once you've been denied consent, that without asking again, merely stating it as what you need to do or almost need to do, that an equivocal answer like okay can vitiate that previous denial of consent, quite frankly. Go ahead. So assuming that she did nod in addition to saying okay to Officer Kaiser entering the house to check on the children and leaving the door open for the officers to follow her into the house, why was it clearly erroneous for Judge Conley to find that she consented to the entry? Because as you just noted, she clearly knew how to say no to the police. And she did it. And then they said it's a need, though. They said, well, we need to do it. May I please finish my question? I'd appreciate it. She said no to Kaiser when he first asked her. She said it again later when the officers asked for permission to search. So what about this interaction indicates that Kaiser was coercing her and that she's merely acquiescing? Okay. So he doesn't ask, okay? When he asks, the answer is no. But what he says he needs to do it. That, Judge, is a gentle bullying tactic. That's shifting gears from asking to demanding. It's not a forceful demand. It's a gentle bullying tactic. Well, you said no. She knows how to say no. And then they say, but we need to. Oh, well, I guess if you need to, okay. So that's not consent. That's not voluntary consent. And that doesn't undo her previous denial. And there's no case in this circuit that even comes close to saying that it is. All of our cases, when there's a denial, there has to be clear and unequivocal consent. Quite frankly, even without the denial, there always has to be clear and unequivocal consent. And that's what we don't have here. She denied when he asked. She only said okay when he stated it as a need. We need to do it. You'd agree that it's a question of fact? Well, is it mixed law and fact? I think there's definitely factual questions. And the judge is dead wrong on some of the facts. You have to watch the video. We've watched the video. You say he's wrong on the nod. Anything else? He's wrong on the nod. And he even actually backs off the nod a little bit because ultimately he says, well, it appears that she nodded. Well, yeah, okay. Okay, but she clearly denied consent. So if all we have is, well, it appears that she nodded, that's not enough to undo unequivocal denial. That's what we're talking about here. Do you think the consent entry has to be verbal? No, absolutely not. It does not have to be verbal. But look at our cases where it's nonverbal. It's clear and unequivocal. They ask, like, for example, what is this one? Sabo, right? US v. Sabo. The marshals come and Mr. Sabo, they ask and he says no. He used some vulgarities to say no. Then a deputy sheriff comes back and this time asks again. And he asks. He doesn't say we need to. He doesn't say we're going to. He asks. And Sabo steps aside and lets him come in. Okay, when you ask, that's your answer. So it could be nonverbal. Absolutely. Our case law permits it. But only in response to a question. There's not a single case in this circuit where this court has said, you can state it as a need, as an imperative statement. And an equivocal response like okay is enough to undo the denial of consent. Now, I'm going to save a little time for rebuttal. We'll give you a minute on rebuttal. Okay, great. Thank you. You're welcome.  May it please the court. I'm Steven Anderson and I represent the government. This court should affirm because the district court did not clearly err when it found that Lisa Coleman voluntarily consented to officers entering her residence. Alternatively, this court can affirm on grounds of exigent circumstances to enter the residence and inevitable discovery, even if a Fourth Amendment violation is believed to have occurred. On the first issue of consent, Lisa Coleman freely and voluntarily consented to officers' entry into her residence. And we know this based on the following facts. Officers were dispatched to a volatile situation, started with a 911 call that Jason Coleman had threatened to kill Lisa Coleman. As Officer Kaiser approached, he was notified by dispatch that Coleman was trying to break into the bedroom with the caller and Lisa. In her discussions with Officer Kaiser, Lisa provided concerning responses regarding the safety of her children. First responding, I hope so, when asked if they would be all right. And then saying in the second encounter, they're okay right this second, but before trailing off. That led Officer Kaiser, based on her statements and body language, to make the statement, which Attorney Ruth didn't give in entirety. He said, okay, I'm sensing that we almost need to come inside to make sure of that in reference to the wellbeing of the child. Lisa slightly nodded her head, yes. She said, okay. And she offered, unprompted, that her children were in her bedroom. There was some discussion about the dogs as the court had raised. There was a question of where Mr. Coleman was located. And then Lisa turned, opened the door, restrained the dogs and left the door open for officers to enter. And it's important to note, she didn't protest when the officers in fact entered. Her words and actions established consent for the officers to enter. Looking at the factors for voluntariness, Lisa's consent was voluntary. She was 47. There was no question about her intelligence or education. She was not outright advised, but she clearly knew that she could withhold a consent as exemplified by her earlier denial. She was not in custody and would have not have felt detained since she left Officer Kaiser briefly to get her shoes. Less than five minutes elapsed between initial contact with Lisa and entry into the home. And there were just two requests and statements regarding entry. Mr. Anderson, do you think a reasonable district judge could come out the other way on this question of consent on this record? From these facts? No, Your Honor. Not perceiving the nod, noting the use of the word need. The Officer's Kaiser statement left room for Lisa to disagree with his sense of the situation. And in response, she nodded, said, okay, immediately volunteered where the children were. And then subsequently opened the door, restrained the dogs. So I think that combination of actions makes it clear that she consented. She did not protest as well. As I understand the law in this area, we're trying to distinguish between consent and acquiescence, right? Correct. And so how do we do that? Particularly in an ambiguous situation like this. On your theory, she's being very cautious in what she's saying because she doesn't want any affirmative consent, right? Correct. To protect herself. And so the communications have elements of ambiguity and uncertainty. And that's why I'm asking whether, particularly given the unusual use of the word need, I understand it's cabined with, I almost sense, that we may need to come in. But need is a word of authority, right? It is. I think this case is distinguished from cases that the officer or the defense raised, bumper where a warrant is claimed, or ivory where the officer just said, I need to pat you down. I think the comment that Mr. Kizer, and if you, from the video, how he says it, I think is also important. It's not a come off as a command. He's trying to think through the situation and he's telling Lisa what he thinks may be the best step. And Lisa Coleman has shown that she could deny consent as she did initially on the first interaction. And this court has never held voluntary consent can't come from an officer's statement or must come in the form of a question. And Lisa Coleman's entitled to change her mind. And the facts from here establish that she did. Unless the court has any further questions, the United States has the court to affirm the district court's opinion in order of denying Coleman's motion to suppress. Okay. Hearing none. Thanks, Mr. Anderson. Mr. Ruth, we'll give you that rebuttal time. Did I see you say two minutes? Yeah, you can do two. Okay. Thank you. So listen to what, listen to what the government is saying. And I've even heard it come from the court. She didn't protest when he came in. She doesn't have to protest. She said no. She said you can't come in. And then he says, well, we need to come in. And so at that point, that's not voluntary consent. That's just acquiescing to his stated need. It doesn't undo the fact that she said no, you can't come in. Or I prefer that you not. So this business of, oh, she has to protest? That's not what the law is. They have to show that she voluntarily consented. And once she said no, that becomes a much higher hurdle for the government. And the other topic that I want to talk about is this business of she's being quiet because she doesn't want him to hear. That's bunk. That's nonsense. She doesn't want them to come in because she fired a shot. That's what the evidence revealed eventually when the police came in. She fired a shot into the ceiling. She took a shot in the direction of Mr. Coleman. So it wasn't a question of, oh, she's being quiet with the police so he doesn't hear what she says because he's afraid of him. She doesn't want them to come in because there's evidence of her wrongdoing in that apartment or in that house. And then finally I want to talk about scope. So I don't concede consent. But if she did, the scope is limited to what they asked to do. And it's also limited by her denial. So they asked for general consent to enter. And when they asked for general consent, she said no. And then they said, okay, well, we need to check on the kids. So if that was consent, it was limited in scope to checking on the kids. And that they did not do. Thank you. Mr. Ruth, thanks to you. Again, Mr. Anderson, thanks to you. Mr. Ruth, I have a note here that you accepted the case on appointment, correct? Yeah, we very much appreciate that. Appreciate your service to the court and to Mr. Coleman. And he should know he was well represented. Thank you. You're welcome. May I just agree with that? He was truly well represented.  Okay. And with those closing comments, that concludes today's arguments. The court will be in recess.